UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RYAN CHAPMAN,**

*Plaintiff,*                                                Case No.: 8:23-cv-29

vs.

**OPICHI, LLC,** *and*
**LDF HOLDINGS, LLC,**

*Defendants.*
_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Ryan Chapman** ("**Mr. Chapman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Opichi, LLC** ("**Opichi**"), and **LDF Holdings, LLC** ("**LDF Holdings**") (collectively, the "**Defendants**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Mr. Chapman against the Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.* ("FCCPA") the Florida Civil Remedies for Criminal Practices Act, § 772.101, Florida Statutes, *et seq.* ("CRCPA"), and for unjust enrichment.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant conduct occurred in Hillsborough County, Florida.

3. This Court has supplemental jurisdiction over Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367, as such claims are part of the same case or controversy as Plaintiff's RICO claims.

4. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Florida Statutes.

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

### Mr. Chapman

6. **Mr. Chapman** is a natural person residing in the city of Tampa, Hillsborough County, Florida, and a *Consumer* as defined by the FCCPA, Section 559.55(8), Florida Statutes.

### Opichi & LDF Holdings

7. Opichi and LDF Holdings are chartered pursuant to the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized sovereign Indian nation (the "LDF Tribe").

8. Opichi and LDF Holdings claim to operate as "arms of the LDF Tribe."

9. Opichi and LDF Holdings can be served at the LDF Tribal Office, located at 418 Old Abe Rd, Lac Du Flambeau, WI 54538.

## FACTUAL ALLEGATIONS

10. On or about June 8, 2022, Mr. Chapman obtained a loan (the "Loan") from www.evergreenloans.com ("Evergreen"). **SEE PLAINTIFF'S EXHIBIT A.**

11. The Loan was in the principal amount of $500.

12. The Loan was assigned loan number 679035.

13. Mr. Chapman took the Loan out from his home in Florida.

14. Evergreen wired the loan proceeds to Mr. Chapman's checking account maintained in Florida.

15. Mr. Chapman received collection correspondence at his home in Florida and had funds withdrawn from his Florida checking account.

16. The transaction therefore occurred in Florida and is subject to Florida law. *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).

17. § 687.071(3), Florida Statutes renders the issuing of credit at an annual interest rate greater than 25% a criminal offense.

18. § 687.071(7), Florida Statutes renders any such loan, and logically any debt stemming from such extension of credit, void and unenforceable.

19. The Loan charged a stated Annual Percentage Rate ("APR") of 884.83%.

20. The Loan was therefore void *ab initio* pursuant to Florida law.

21. The Loan charged interest at more than double Florida's criminal rate of 25%, and therefore the Loan, and any balance arising therefrom, constitutes an "unlawful debt" per § 772.102(2), Florida Statutes and 18 U.S.C. § 1961(6).

22. The Loan required Mr. Chapman to make bi-weekly payments of up to $175, with payments beginning June 17, 2022 and ending April 7, 2023.

23. Mr. Chapman made at least six payments towards the Loan, totaling $802.50.

24. Despite this, Evergreen alleged a remaining balance of $790.

25. Mr. Chapman utilized the loan proceeds for personal and household purchases.

26. The Loan balance thus meets the definition of a debt under the FCCPA, § 559.55(6), Florida Statutes.

27. Evergreen sought to collect this balance via emails to Mr. Chapman and via credit reporting.  **SEE PLAINTIFF'S EXHIBIT B.**

## The Defendants' Lending Enterprise

28. LDF Holdings acts as the parent company to dozens of tribal lending entities ("TLEs"), all of which are purportedly chartered under the laws of the LDF Tribe.

29. The only business Opichi conducts is making small-dollar loans to consumers through the website, www.evergreenloans.com.

30. Opichi claims to act as an arm of the LDF Tribe.

31. As an arm of the tribe, Opichi claims tribal sovereign immunity from criminal and civil prosecution regarding its lending practices, which constitute felonies in many states, including Florida.

32. However, the idea that Opichi is a legitimate "arm-of-the-tribe" is a farce.

33. Opichi contracts with a series of non-tribal "service providers," such as Rivo Holdings, LLC.

34. These service providers purchase leads, perform loan portfolio management, collection, call center operations, and credit reporting on behalf of Evergreen.

35. These service providers retain the vast majority of revenue generated through collection of Evergreen's loans.

36. In exchange for chartering Opichi, the LDF Tribe is paid a small percentage of revenues, on information and belief, around 2%.

37. Such sham arrangements are known as "rent-a-tribe" agreements.

38. In "rent-a-tribe" schemes, as here, the tribal lending entity is a mere "front" for what is actually an illegal lending scheme; the American Indian tribe involved has no meaningful part in the operations of the business, and all substantive aspects of the payday lending operations (*e.g.*, funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections) are performed by individuals unaffiliated with the tribe.

39. The Defendants collected the Loan through ACH withdrawals and, on information and belief, emailed statements to Mr. Chapman.

40. The Defendants' conduct caused Mr. Chapman to repay amounts on a void loan.

41. The Defendants' conduct further caused Mr. Chapman to suffer from extreme emotional distress upon learning that the loan he had entered into charged interest at more than 30 times Florida's maximum rate.

42. Mr. Chapman has hired the aforementioned law firm to represent his in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF 18 U.S.C § 1962(c)
## All Defendants

43. Mr. Chapman incorporates Paragraphs 1 – 42 as if fully restated herein.

44. The Defendants, through their joint operation and control of Evergreen, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

45. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

46. The Defendants' participation in the enterprise violated 18 U.S.C. § 1962(c) and caused Plaintiff to repay amounts on his unlawful loan.

47. The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Evergreen, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Mr. Chapman's Florida bank account.

48. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $2,407.50, reasonable attorney's fees, and costs.

## COUNT II
### VIOLATIONS OF 18 U.S.C § 1962(d)
### All Defendants

49. Mr. Chapman incorporates Paragraphs 1 – 42 as if fully restated herein.

50. The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other persons, to issue and collect unlawful debts through Evergreen.

51. The Defendants each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued credit to Mr. Chapman; (b) initiated ACH deposits and withdrawals to Mr. Chapman's bank accounts (c) attempted collection of the loan through emails and phone calls to Mr. Chapman; and/or (d) claimed ownership of Evergreen to provide a guise of issuance from a tribe.

52. The Defendants utilized the internet, telephone and mail to reach across state lines in furtherance of their conspiracy.

53. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $2,407.50, reasonable attorney's fees, and costs.

## COUNT III
## VIOLATIONS OF THE CRCPA – § 772.103(3), FLA. STAT.
## All Defendants

54. Mr. Chapman adopts and incorporates paragraphs 1 – 42 as if fully stated herein.

55. The Defendants, through their joint operation and control of Evergreen, constitute an "enterprise" under the CRCPA, § 772.102(3), Florida Statutes.

56. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

57. The Defendants' participation in the enterprise violated § 772.102(3), Florida Statutes and caused Plaintiff to repay amounts on his unlawful loan.

58. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $2,407.50, reasonable attorney's fees, and costs.

## COUNT IV
## VIOLATIONS OF THE CRCPA –§ 772.103(4), FLA. STAT.
## All Defendants

59. Mr. Chapman adopts and incorporates paragraphs 1 – 42 as if fully stated herein.

60. The Defendants violated § 772.103(4), Florida Statutes by conspiring with each other, and other persons, to issue and collect unlawful debts through Evergreen.

61. The Defendants each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued the Loan to Mr. Chapman; (b) attempted collection of the Loan through ACH withdrawals from Mr. Chapman's checking account; and/or (c) claimed ownership of Evergreen to provide a guise of issuance from a tribal lender.

62. The Defendants each knew that the purpose of the enterprise was to issue and collect unlawful debts.

63. The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through Evergreen.

64. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $2,407.50, reasonable attorney's fees, and costs.

## COUNT V
## UNJUST ENRICHMENT

65. Mr. Chapman incorporates Paragraphs 1 – 42 as if fully restated herein.

66. The Loan issued by Evergreen to Plaintiff charged an interest rate which rendered it void and unenforceable in Florida.

67. Plaintiff conferred a benefit on Defendants when he made payments on the Loan, as he had no obligation to do so and, therefore, Defendants were owed nothing.

68. Defendants knew, or should have known, of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with

the unlawful loan such that it would be inequitable for Defendants to retain the money they received.

69. Accordingly, Plaintiff seeks to recover from Defendants all amounts repaid on his Evergreen account.

## COUNT VI
## VIOLATIONS OF THE FCCPA - § 559.72(9), Florida Statutes
## All Defendants

70. Mr. Chapman incorporates Paragraphs 1 – 42 as if fully restated herein.

71. The Defendants violated **§ 559.72(9), Florida Statutes**, when they attempted to collect – and did collect – a loan made to Mr. Chapman by Evergreen, therein asserting the legal right to collect such loan.

72. The loan was illegitimate and unenforceable due to the application of interest rates in excess of 700% percent annually on the principal amount of the loan, in violation of § 687.071, Florida Statutes, and the Defendants knew, or should have known, the loans was unenforceable in Florida.

73. Accordingly, the Defendants are liable to Mr. Chapman for actual damages, statutory damages of up to $1,000.00, reasonable attorneys' fees, and costs.

74. Mr. Chapman also seeks an injunction against the Defendants, prohibiting them from any further collection of any unlawful debt from Mr. Chapman.

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Chapman respectfully requests that this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a. An award of statutory, actual and treble damages as pled herein;

b. An award of attorneys' fees, litigation expenses, and costs of suit;

c. Injunctive relief prohibiting the Defendants from further collection of the Loan; and,

d. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Chapman hereby demands a jury trial on all issues so triable.

Respectfully submitted on **January 5, 2023**, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
FL Bar # 119168
BGeiger@seraphlegal.com
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    Mr. Chapman's Evergreen Loan Agreement, Excerpt
B    Mr. Chapman's Clarity Consumer Disclosure, Excerpt